# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MICHAEL J. HOLDEN,

    Plaintiff,

    v.                                          Case No. 07-C-0930

NORTHWESTERN MUTUAL FINANCIAL
 NETWORK,
THOMAS GORIS, JR. and
MICHAEL A. FORMELLA,

    Defendants.

# DECISION AND ORDER
# ON MOTIONS FOR SUMMARY JUDGMENT

    The plaintiff, Michael J. Holden, filed this action on October 18, 2007, alleging that the defendants terminated his employment in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 et. seq. Defendants Michael A. Formella and Thomas Goris, Jr. have filed a motion for summary judgment. (Docket #24). Defendant Northwestern Mutual Financial Network also has filed a motion for summary judgment. (Docket #27). The motions are fully briefed and will be addressed herein.

    The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

## **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 267; see also, Celotex Corp., 477 U.S. at 324; Fed. R. Civ. P. 56(e) ("When a summary judgment motion is made and supported as provided in [Rule 56(c)], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's

case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322 (emphasis added).

Evidence relied upon in a motion for summary judgment must be of a kind that would be admissible at trial. See Waldridge v. American Hoechst Corp., 24 F.3d 918, 921 n.2 (7th Cir. 1994) (citing Gustovich v. AT & T Communications, Inc., 972 F. 2d 845, 849 [7th Cir. 1992]; Fed. R. Civ. P. 56 [e]). Federal Rules of Civil Procedure 56(e) expressly provides in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

See also, Halloway v. Milwaukee County, 180 F.3d 820, 827 n.9 (7th Cir. 1999) (upholding district court's exclusion on summary judgment of portions of affidavit as hearsay).

## **RELEVANT UNDISPUTED FACTS**[1]

On June 1, 1957, plaintiff Michael Holden began his career in the insurance business when he signed a contract with Harold Pritchard, a Northwestern Mutual Life Insurance Company (Northwestern Mutual) district agent, to become a special agent. (Deposition of Michael J. Holden [Holden Dep.] at 38; Holden Dep., Exh. 1). In accordance with this contract and subsequent Northwestern Mutual agent contracts, the plaintiff was authorized to sell the

---

[1]The undisputed relevant factual information is taken from the defendants' proposed findings of fact, the plaintiff's complaint which is a verified complaint (See Ford v. Wilson, 90 F.3d 245,246 [7th Cir. 1996]) and the plaintiff's first letter filed in response to the defendants' motions for summary judgment which was sworn to by the plaintiff and notarized. The plaintiff did not file a response to the defendants' proposed findings of fact

- 3 -

insurance and financial products of Northwestern Mutual, until the termination of his agent contract on October 13, 2006.

Defendant Northwestern Mutual[2] is a mutual life insurance company headquartered at 720 East Wisconsin Avenue, Milwaukee, Wisconsin. (Affidavit of Michael Ertz [Ertz Aff.] ¶ 2). Northwestern Mutual's primary business consists of underwriting, issuing and servicing life insurance, disability income insurance, long term care insurance and annuity products. It employs all of its management and support staff in its home office.

Defendant Thomas Goris, Jr. is a general agent of Northwestern Mutual. Northwestern Mutual enters into contracts directly with general agents located throughout the United States. Northwestern Mutual's contract with each of its general agents expressly provides that general agents are independent contractor, not employees, of Northwestern Mutual. General agents, such as defendant Goris, are free to enter into contracts with district agents and field directors to grow their general agencies.

Defendant Michael Formella is a district agent of Northwestern Mutual. Defendant Formella operates his district agency under the terms of a contract formed with defendant Goris. A district agent has the authority to enter into contracts with sales agents. Defendant Formella entered into such a contract with the plaintiff for the first time on June 1, 1992, as a special agent. Subsequently, on April 1, 1996, and later on May 1, 1999, the plaintiff entered into contracts with defendant Formella as a senior agent.

---

[2]The court notes that the plaintiff's complaint cites the Northwestern Mutual Financial Network (NMFN) as a defendant. NMFN is solely the marketing name for the sales and distribution arm of Northwestern, its subsidiaries and affiliates. (Ertz Aff. ¶ 4). It is not a legal entity. The proper defendant is Northwestern Mutual Life Insurance Company (Northwestern Mutual).

- 4 -

Northwestern Mutual does not solicit prospective costumers to apply for or purchase its insurance products, does not hire any employees to sell its products, and does not sell insurance from its home office, or through direct marketing, bank affiliations or the internet. Instead, Northwestern Mutual utilizes a network of professional insurance agents for the exclusive marketing and sales of its various products. Based on the belief that a professional, entrepreneurial sales force who is responsible for the success or failure of their business will perform at a higher level than employees, Northwestern Mutual's network of insurance agents is composed entirely of independent contractors. This sales force is structured such that Northwestern Mutual directly enters into contracts with general agents. General agents are free to contract with district agents and field directors, all of whom are free to contract with sales agents.

The plaintiff did not sign a contract with Northwestern Mutual or defendant Goris. Each of the agent contracts the plaintiff signed with Mr. Formella state:

> Agent shall be an independent contractor and nothing contained herein shall be construed to make Agent an employee of the Company, General Agent or First Party. Agent shall be free to exercise his own judgment as to the persons from whom he will solicit Applications and the time, place and manner of solicitation, but the Company from time to time may adopt regulations respecting the conduct of the business covered hereby, not interfering with such freedom of action of Agent.

(Holden Dep., Exh. 8 ¶ 4, Exh. 10 ¶ 4). Each agent contract the plaintiff signed between June 1, 1957, and May 1, 1999, contained language that specified his status as an independent contractor. The plaintiff understood the contract language and stated that the terms of the contract accurately represented the actual working relationship. (Holden Dep. at 38-40, 46-47).

The plaintiff alone decided what clients and market niche to pursue. He was never instructed by anyone to pursue any particular client, nor was he provided a list of leads for soliciting new clients. Instead, the plaintiff developed his own leads, first by tapping into his own circle of acquaintances, and then by relying upon referrals from those existing clients. The plaintiff alone "decided how much time and effort [he was] going to put in to try to make [his] career successful." (Holden Dep. at 26).

The plaintiff decided when to show up for work each day, when to leave work at the end of the day, how hard to work on any particular day, and how many hours to put in each week. He was not required to report the time he spent at work, and he alone decided "which hours, days, weeks, [and] months of the year to work or not work." (Holden Dep. at 67). The plaintiff had the "right to choose whether or not [he was] going to contract" with another general agent in the Northwestern Mutual network. (Holden Dep. at 106).

Although general agents and district agents rent space to sales agents within their respective agencies, Northwestern Mutual does not require sales agents to maintain their offices in a District Agency or General Agency facility. Northwestern Mutual sales agents often rent their own office space in locations detached from the General Agency and District Agency, and even operate their insurance businesses out of their homes. The plaintiff was not required to maintain an office in the District Agency or General Agency. The plaintiff chose to maintain his office in District Agency and/or General Agency facilities over the years. The plaintiff rented his own, detached office space during the six to 12 months prior to the termination of his Northwestern Mutual agent's contract in October 2006. The plaintiff and the assistants he hired never worked out of an office located on Northwestern Mutual's premises.

The plaintiff had complete freedom to decide what products to discuss with clients, what products not to discuss with clients, and how to present those products to the clients. The plaintiff had his "own style and [his] own approach that [he was] free to develop." (Holden Dep. at 72-73). The plaintiff was subject only to company rules and guidelines designed to ensure the sales agents' compliance with state and federal laws and regulations governing insurance and financial products. Within this framework, the plaintiff "had the freedom of choice as an independent business person to approach this the way [he] saw fit," including "freedom of choice as to how to approach these topics, what products to discuss and how to present them to the clients." (Holden Dep. at 72-74; Ertz Aff. ¶ 17). The plaintiff alone "sat down with the client and undertook that discussion with the client" and Northwestern Mutual had "no role whatsoever" in the plaintiff's "meeting with clients and selling insurance and soliciting clients." (Holden Dep. at 71, 66). Moreover, none of the plaintiff's district agents or general agents ever attended these client meetings or instructed the plaintiff what to discuss with his clients.

Although the plaintiff preferred selling Northwestern Mutual products due to their superior quality, if Northwestern Mutual did not offer certain products, could not issue products to a particular insured, or could not underwrite a product at rates satisfactory to the applicant, the plaintiff was free to sell insurance products issued by competitors of Northwestern Mutual. The plaintiff took advantage of this right and entered into numerous brokerage contracts with competitors of Northwestern Mutual over the years.

The plaintiff chose whether and where to advertise to prospective clients, whether and when to purchase gifts for his clients and when and how to entertain his clients. Although the plaintiff was subject to company and agency minimum sales production requirements as

a condition to maintaining his soliciting agent's contract, the plaintiff was never required to provide "any kind of accounting or report of the sales [he] made that week or month." (Holden Dep. at 101-103, 106, Exh. 8, ¶ 8). When he became a senior agent on April 1, 1996, the plaintiff was no longer even required to meet minimum production standards as a condition to keeping his agent's contract. The plaintiff decided which industry and certifications to pursue and he alone decided whether, when, and whom to hire as secretaries and assistants to support his insurance sales business.

Each year that the plaintiff sold Northwestern Mutual insurance and financial products, he submitted state and federal tax returns identifying himself as a self-employed, sole proprietor business person. The plaintiff reported his income each year on a Schedule C – Profit or Loss from Business "based on [his] status as a sole proprietor and independent business person," and thus was "able to take advantage of deducting [his] business [expenses]." (Holden Dep. at 83-84). The income reported on the plaintiff's tax returns was obtained through commissions the plaintiff received through the sale of various insurance and securities products and was not obtained through hourly wages or a salary.

Between October 23, 2003, and January, 2004, the plaintiff experienced three incidents of fainting. (Complaint at 3). As a result, the plaintiff sustained various injuries including fractured ribs, a punctured lung, facial abrasions and substantial blood loss. Id. The plaintiff's doctor suggested that the cause of fainting spells was due to medications the plaintiff had been prescribed over the years. (Plaintiff's Response Letter dated May 20, 2008, at 1). As a result of the plaintiff's final fainting incident, he was hospitalized for three weeks (including time at a rehabilitation center) and spent two months at an assisted living center. Id.

- 8 -

**ANALYSIS**

In seeking summary judgment, defendant Northwestern Mutual asserts that the court lacks jurisdiction to hear the plaintiff's ADA claim because the plaintiff was an independent contractor and not an employee of any of the defendants. Defendants Goris and Formella joined in the motion for summary judgment filed by defendant Northwestern Mutual and also filed their own motion asserting that the plaintiff failed to establish that he is disabled as defined under the ADA.

The purpose of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, is to eliminate discriminatory practices against individuals with disabilities. See 42 U.S.C. § 12101(b). Title I of the ADA forbids certain employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). An individual has a "disability" if he: 1) has a physical or mental impairment that substantially limits one or more of the major life activities;[3] 2) has a record of such an impairment; or 3) is regarded as having such an impairment. See 42 U.S.C. § 12102(2); Roth v. Lutheran General Hosp., 57 F.3d 1446, 1454 (7th Cir. 1995) (citing Hamm v. Runyon, 51 F.3d 721, 724 [7th Cir. 1995]).

To state a cause of action under the ADA, a plaintiff must establish three elements: 1) that he is a disabled person within the meaning of the ADA, 2) that he is otherwise qualified,

---

[3]Major life activities are defined as "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Roth v. Lutheran General Hosp., 57 F.3d 1446, 1454 (7th Cir. 1995) (citing 29 C.F.R. §§ 1613.702[c], 1630[i]; Hamm v. Runyon, 51 F.3d 721, 724 [7th Cir. 1995]).

with or without reasonable accommodation, to perform the essential functions of the job, and 3) that the employer discriminated against him because of his disability. Howard v. Navistar Intern. Trans. Corp., 904 F.Supp. 922, 927 (E.D. Wis. 1995); see also, White v. York International Corp., 45 F.3d 357, 360-61 (10th Cir. 1995).

However, the protections granted by Title I are applicable only to an employer–employee relationship. Aberman v. J Abouchar & Sons, Inc., 160 F.3d 1148, 1150 (7th Cir 1998). Title I does not provide protection for independent contractors. Id. The court of appeals for this circuit expressly held that "[t]he ADA protects 'employees' but not independent contractors." Id. Accordingly, independent contractors do not have standing to sue under the ADA. See Vakharia v. Swedish Covenant Hosp., 190 F.3d 799, 805 (7th Cir. 1999)

"The ultimate question of whether an individual is an employee or an independent contractor is a 'legal conclusion' which involves 'an application of the law to the facts.'" E.E.O.C. v. North Knox School Corp., 154 F.3d 744, 747 (7th Cir. 1998) (quoting Knight v. United Farm Bureau Mut. Ins. Co., 950 F.2d 377, 379 [7th Cir. 1991]). To differentiate between an "employee" and an "independent contractor", the court considers the following factors:

> (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

Knight v. United Farm Bureau Mut. Ins. Co., 950 F.2d 377, 378-79 (7th Cir. 1991). The most important factor is the employer's right to control the worker's actions. Worth v. Tyer, 276 F.3d 249, 263 (7th Cir. 2001).

> The undisputed facts establish each of the plaintiff's contracts with Mr. Formella state:
>
> Agent shall be an independent contractor and nothing contained herein shall be construed to make Agent an employee of the Company, General Agent or First Party. Agent shall be free to exercise his own judgment as to the persons from whom he will solicit Applications and the time, place and manner of solicitation, but the Company from time to time may adopt regulations respecting the conduct of the business covered hereby, not interfering with such freedom of action of Agent.

(Holden Dep., Exh. 8, ¶ 4, Exh. 10, ¶ 4). Each agent contract the plaintiff signed between June 1, 1957 and May 1, 1999, contained language that specified his status as an independent contractor. Although the label "independent contractor" in a contract is not binding, the undisputed facts establish that the terms of the contract accurately represented the actual working relationship.

The plaintiff was free to determine his personal work schedule. He was individually responsible for deciding which clients to pursue and he did so without the guidance or assistance of personnel from either the Northwestern Mutual home office, General Agent office, or District Agent office. The plaintiff chose whether and where to advertise to prospective clients, whether and when to purchase gifts for his clients, and when and how to entertain his clients. Additionally, the plaintiff was never required to provide "any kind of accounting or report of the sales [he] made that week or month." (Holden Dep. at 101-103, 106, Exh. 8 ¶ 8).

Although at various times throughout his career the plaintiff located his office in either the General Agent's or District Agent's office, he was not required to maintain an office in

- 11 -

either agency. Moreover, the plaintiff decided which industry and certifications to pursue and he alone decided whether, when, and whom to hire as secretaries and assistants to support his insurance sales business. The plaintiff paid for any secretarial or filing assistance he required, as well as other expenses associated with running his business.

In addition, the Wisconsin and federal tax returns filed by the plaintiff between 1992 and 2006 identified the plaintiff as a sole proprietor business person. The plaintiff obtained the income reported on these tax returns through commissions he received because of the sale of various insurance and securities products. The plaintiff did not receive hourly wages or a salary.

The undisputed facts before the court establish that the plaintiff was an independent contractor. As such, he does not have standing to sue under the ADA. Accordingly, defendant Northwestern Mutual Financial Network's motion for summary judgment will be granted.

The court notes that defendant Northwestern Mutual asserts in its reply brief that the court should dismiss the plaintiff's state law breach of contract claims with prejudice as a matter of law. Defendant Northwestern Mutual did not address in its motion for summary judgment the plaintiff's state law breach of contract claims. Therefore, the plaintiff did not have an opportunity to respond to defendant Northwestern Mutual's assertion that such claims should be dismissed. Moreover, jurisdiction over any state law claims alleged by the plaintiff is based on the supplemental jurisdiction statute, 28 U.S.C. § 1367. The statute provides that a district court "may decline to exercise supplemental jurisdiction" over the pendant state law claims if the court has dismissed all claims over which it has original jurisdiction. Wright v. Associated Ins. Companies Inc., 29 F.3d 1244, 1251 (7th Cir. 1994).

In this case, the court's jurisdiction was based on the plaintiff's apparent ADA claim. The court found, however, that the plaintiff lacked standing to sue under the ADA. Therefore, under the circumstances, the court declines to exercise supplemental jurisdiction over the plaintiff's state law claims. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966) (stating that the federal claim must have substance sufficient to confer subject matter jurisdiction on the court); see also, Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir. Ind. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

In sum, defendant Northwestern Mutual's motion for summary judgment will be granted. Given the court's conclusion regarding defendant Northwestern Mutual's summary judgment motion, defendants Michael A. Formella and Thomas Goris, Jr's motion for summary judgment will be denied as moot.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that defendant Northwestern Mutual Financial Network's motion for summary judgment be and hereby is **granted**. (Docket #27).

**IT IS FURTHER ORDERED** that defendants Michael A. Formella and Thomas Goris, Jr.'s motion for summary judgment be and hereby is **denied as moot**. (Docket #24).

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over the plaintiff's state law claims. Jurisdiction over said claims are relinquished to the state courts.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of February, 2009.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge
